UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

ANITA WAXMAN,

        Plaintiff,   **COMPLAINT**

  -against-

                                       Case No. 05 CV 10503 (KMK)

THOMAS PUCCIO,

        Defendant.
_____X

    Plaintiff, Anita Waxman, as and for her Complaint against defendant, Thomas Puccio, alleges and states as follows:

## PARTIES

1. Plaintiff, Anita Waxman, is domiciled in and a citizen of the State of New York, and maintains a residence in the City of New York.

2. Defendant, Thomas Puccio, an attorney duly admitted to practice law in the State of New York, is domiciled in and a citizen of the State of Connecticut, and maintains a business address at 230 Park Avenue, New York, New York.

## JURISDICTION AND VENUE

3. Jurisdiction of this action is based on 28 U.S.C. §1332(a), in that plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000.00.

4. Venue of this action in this district is based on 28 U.S.C. §1391(a) and (c), in that plaintiff resides in this district and the events and omissions giving rise to the plaintiff's claims occurred in this district.

## NATURE OF THE ACTION

5.  This is an action against an attorney for fraud in the inducement, legal malpractice, breach of fiduciary duty, misappropriation of funds, unjust enrichment, and violation of New York State Judiciary Law §487. Defendant, Thomas Puccio, was retained by plaintiff, Anita Waxman in or about November, 2001 to represent her in a contested matrimonial action in the Supreme Court, New York. At that time, defendant made false verbal assurances to plaintiff in order to induce her to retain him, including but not limited, to assuring plaintiff that if he retained outside counsel to assist him, that defendant would make the necessary fee payments to such outside counsel directly from the fees plaintiff paid him. Thereafter, defendant committed the following acts and omissions which are the basis of plaintiff's claims.

A. From the date of his retention in or about, November, 2001 to May, 2002 defendant failed to provide plaintiff with a written retainer agreement or statement of client's rights as required by 22N.Y.C.R.R. §§1400.2, 1400.3. During that period, defendant received a minimum of $75,000.00 from plaintiff for which he has never accounted. In May, 2002, defendant finally provided plaintiff with a written retainer agreement which he had backdated to March 18, 2002. Defendant backdated his retainer agreement in order to conceal from the Court that prior to making his motion for interim counsel fees, he had not obtained a written retainer agreement despite appearing in Court on a number of prior occasions as plaintiff's counsel;

  B. Defendant failed to provide plaintiff with a written itemized invoice of services rendered every thirty or sixty days as required by the retainer agreement at 22N.Y.C.R.R. §1400.3(9). In fact, to date defendant has not forwarded any itemized bills or accounted in writing to plaintiff despite receiving over $500,000.00 in fees from her;

  C. At the time of his retention, defendant failed to disclose that he had an ongoing professional relationship with the law firm representing plaintiff's husband in the contested matrimonial action;

  D. Despite representing to plaintiff that he was experienced and competent in New York State matrimonial law, defendant committed numerous acts and omissions of legal malpractice including but limited to making numerous baseless motions he knew or should have known would not be successful; and,

  E. During the course of the contested matrimonial action, defendant, acted as escrowee of an escrow fund to which plaintiff was a beneficiary. Without the plaintiff's knowledge or consent, defendant disbursed hundreds of thousands of dollars from that escrow fund including approximately $250,000.00 to himself for which to date he has not accounted to plaintiff.

### FACTUAL BACKGROUND

6.  Prior to November 16, 2001, plaintiff and her husband had agreed to sell a vacation home they owned in Aspen, Colorado, the proceeds of which were to be held in escrow by the parties' respective counsel.

7.  On or about November 16, 2001 plaintiff retained defendant to represent her in

        her divorce action pending in Supreme Court, State of New York, New York County. Prior thereto the plaintiff and her husband had agreed to proceed with the divorce action under Index Number 350165/01 pursuant to a Summons with Notice filed by plaintiff's husband. The action had been assigned to the Hon. Laura Drager and a preliminary conference setting forth a discovery had been held on August 17, 2001.

8.      At the time of his retention, in response to plaintiff's concerns that defendant was a solo practitioner who was not an expert in contested matrimonial actions, defendant falsely assured plaintiff that he possessed the skills and competence to handle a contested matrimonial action, and that, in any event, he would retain outside counsel to provide defendant guidance, which counsel, defendant falsely assured plaintiff would be paid from the fees he received from plaintiff.

9.      Relying upon defendant's false assurances, plaintiff retained defendant to represent her in her contested matrimonial action. At the time of his retention, defendant demanded and received a retainer of $75,000.00 from plaintiff despite his failure to provide plaintiff with a written retainer agreement or statement of client's rights.

10.    At the time of his retention, defendant failed to disclose to plaintiff that he was co-counsel with her husband's matrimonial attorneys on another substantial legal matter in which defendant had a significant financial interest.

11.    At no time during defendant's representation of plaintiff in her matrimonial action, did defendant disclose his professional co-counsel relationship with her

   husband's matrimonial attorneys.

12. Subsequent to his retention, defendant engaged in wasteful and frivolous conduct including commencing a subsequent action for divorce in Connecticut and then making a motion to dismiss or stay the New York action which was denied; a motion to recuse Judge Laura Drager which was denied; and a motion for interim counsel fees which was denied.

13. In all three instances, defendant knew or should have known that his actions were frivolous and without merit and would be denied by the Court.

14. Specifically, in making his motion for interim counsel fees in May 2002, defendant failed to comply with 22N.Y.C.R.R. §202.17(k)(3). Defendant, while representing to the Court in his affirmation in support of his motion for counsel fees, that he and his co-counsel had spent approximately 150 hours on plaintiff's case, failed to provide the Court itemized invoices to back up his sworn assertion.

15. Moreover, immediately prior to making his motion for interim counsel fees, defendant had plaintiff sign a written retainer agreement which he backdated to March 18, 2002. Defendant intentionally backdated the written retainer agreement to March 18, 2002 because he knew, or should have known, that absent a backdated signed written retainer agreement, the Court would not grant him any interim counsel fees for the period in which he allegedly rendered legal services.

16. Defendant's submission of a backdated retainer agreement was intended fraudulently to induce the Court to award him counsel fees for a period during

which he allegedly rendered legal services without a signed retainer agreement.

17. Further, despite orally representing to the Court that he kept meticulous time records, defendant never produced those alleged records to the Court nor has he, to date, provided plaintiff with those records.

18. Defendant's representation to the Court was false in that no such time records allegedly kept by defendant existed at the time he made his representation to the Court.

19. Notwithstanding his failure to provide the Court with his purported meticulous time records, defendant pressed plaintiff for additional payment of fees. As a result plaintiff pledged her jewelry as collateral for a loan of $200,000.00 which she wired to defendant on or about July 2, 2002.

20. In addition to the foregoing, defendant frivolously commenced a subsequent action for divorce in Connecticut on behalf of plaintiff; made a motion to recuse Judge Drager; and made a motion to dismiss plaintiff husband's action for divorce; all of which were unsuccessful, and which defendant knew or should have known, would not be successful.

21. Prior to the sale of plaintiff's Aspen Colorado house Judge Laura Drager had directed that all monies received from the rental of the Aspen house be placed into an account set up and administered by an outside accounting firm. At the end of each month, $40,000.00 from that month's rentals was to be retained in the account to cover mortgage payments and expenses with the remainder to be divided equally between plaintiff and her husband.

22. Despite numerous reminders by plaintiff of Judge Drager's Order with respect to the Aspen house rental money, defendant failed to take the necessary steps to protect plaintiff's interests. As a result all the rental funds were paid to plaintiff's husband and defendant never demanded or received an accounting of such payments and plaintiff never received her sum thereof.

23. Thereafter the Aspen house was sold. In accordance with a Stipulation dated February 11, 2003, signed by the parties and their respective counsel, all funds received from the sale of the Aspen house were to be held in an interest bearing escrow account in the names of the parties' respective counsel.

24. Additionally, any withdrawals from the escrow account required the joint signature of the parties' respective counsel.

25. Subsequent to the funds from the sale of the Aspen house being placed in the joint-escrow account, approximately $2.3 million dollars was transferred into an account maintained by defendant.

26. Thereafter, defendant, without the knowledge, consent, or authorization of plaintiff, misappropriated hundreds of thousands of dollars, for which to date, he has not accounted to plaintiff.

27. Defendant disbursed from his account approximately $250,000.00, as and for alleged counsel fees without the knowledge, consent, or authorization of plaintiff.

28. In addition to the foregoing, defendant failed to exercise due diligence by failing to take the necessary action in discovery to obtain information regarding the financial interests of plaintiff's husband including his failure to request or obtain

any financial information regarding the financial interest plaintiff's husband had in a venture known as Psilos II.

29. Ultimately, the parties' divorce action was settled and the settlement embodied a document which proved to be nothing more than an agreement to agree. Defendant failed to exercise due diligence in connection with that document which contained numerous ambiguities and undefined terms as well as an incorrect paragraph reference that materially disadvantaged plaintiff and which he represented to plaintiff settled all outstanding issues between plaintiff and her husband and demanded plaintiff sign immediately without providing plaintiff with any explanation as to the contents therein.

30. When plaintiff expressed her concerns about the document, defendant falsely assured her that if any problems arose from that document he would resolve them after she signed it.

31. Plaintiff, after being pressured to sign the document by defendant, did sign it. Nevertheless, notwithstanding his prior representations to the plaintiff, at no time thereafter did defendant resolve any of the problems which arose from that document including any of the ambiguities or undefined terms of the Agreement which failure has resulted in plaintiff having to retain new counsel at a considerable cost.

### AS AND FOR A FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

32. Plaintiff repeats and reiterates paragraphs "1"-"31" as if fully set forth herein.

33. Defendant, by his failure to provide plaintiff with an itemized statement of charges at least every 60 days or provide plaintiff any itemized accounting for the services he allegedly rendered in exchange for his receipt of approximately $525,000.00 in legal fees intentionally and wilfully breached the backdated written retainer agreement.

34. By virtue of defendant's counsel, plaintiff has been damaged in the sum of at least, $525,000.00, the actual sum of which is to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION

### JUDICIARY LAW § 487

35. Plaintiff repeats and reiterates paragraphs "1"-"34" as if fully set forth herein.

36. By his conduct in intentionally failing to provide plaintiff with itemized billing statements at least every 60 days and by his intentional and wilful conduct in backdating the written retainer agreement immediately prior to submitting a motion to Court for interim counsel fees, defendant engaged in deceitful conduct towards plaintiff and the Court in violation of Judiciary Law §487.

37. By virtue of defendant's deceitful conduct, plaintiff has been damaged in a sum to be determined at trial but in an amount of at least $1,000,000.00 to be trebled to $3,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT

38. Plaintiff repeats and reiterates paragraphs "1"-"37" as if fully set forth herein.

39. By failing to account at least every 60 days to plaintiff with respect to the alleged

services rendered, defendant, has been unjustly enriched in the amount of at least $525,000.00, the actual sum of which is to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION

### MISAPPROPRIATION OF CLIENT'S FUNDS

40. Plaintiff repeats and reiterates paragraphs "1"-"39" as if fully set forth herein.

41. By failing to provide plaintiff with itemized billing statements at least every 60 days and by withdrawing $250,000.00 of plaintiff's funds from his account without plaintiff's knowledge, consent, or authorization, for legal fees for services allegedly rendered but never accounted for, defendant misappropriated $250,000.00 of plaintiff's funds.

42. By virtue of defendant's conduct, plaintiff has been damaged in the amount of $250,000.00.

### AS AND FOR A FIFTH CAUSE OF ACTION

### VIOLATION OF JUDICIARY LAW §487

43. Plaintiff repeats and reiterates paragraphs "1"-"42" as if fully set forth herein.

44. By misappropriating $250,000.00 of plaintiff's funds, defendant engaged in deceitful, and dishonest conduct in violation of Judiciary Law §487.

45. By virtue of defendant's deceitful and dishonest conduct, plaintiff has been damaged in the sum of $250,000.00, to be trebled to $750,000.00.

### AS AND FOR A SIXTH CAUSE OF ACTION

### FRAUDULENT INDUCEMENT

46. Plaintiff repeats and reiterates paragraphs "1"-"45" as if fully set forth herein.

47. By falsely assuring plaintiff he was experienced and competent in contested matrimonial actions, and by falsely assuring plaintiff that he would bring in outside counsel to assist him and pay their fees directly from his fees, defendant fraudulently induced plaintiff to retain him in her contested matrimonial action.

48. By virtue of defendant's conduct, plaintiff has been damaged in the amount of at least $1,000,000.00, the actual amount of which is to be determined at trial.

AS AND FOR A SEVENTH CAUSE OF ACTION

LEGAL MALPRACTICE

49. Plaintiff repeats and reiterates paragraphs "1"-"48" as if fully set forth herein.

50. In being retained by plaintiff to render legal services with respect to her contested matrimonial action, defendant had a fiduciary duty, obligation and responsibility to render legal services in conformity with the acceptable standard practice and custom applied to matrimonial counsel in the State of New York.

51. Defendant departed from the standard of care commonly possessed by matrimonial counsel in the State of New York in that he failed to:

   A. Conduct the appropriate and necessary discovery required to ascertain the financial interests of the plaintiff's husband including his failure to fully interview an individual, Harlan Dunn, who knew the whereabouts of substantial amounts of money plaintiff's husband had move out of the country;

   B. Adequately prepare for Court appearances resulting in numerous adverse decisions to plaintiff;

   C. Prepare a motion for interim counsel fees in conformity with the laws of the

    State of New York and the applicable New York Rules of Court resulting in a denial by the Court of plaintiff's application for such fees;

    D. To take the necessary steps to ensure that all rental income from the parties' Aspen house were placed in an account to be administered by an accounting firm as per Judge Laura Drager's Order;

    E. Competently negotiate or draft a settlement agreement rather than counsel plaintiff to sign a document which was an agreement to agree replete with numerous ambiguities, deficiencies and misdesignated paragraphs, all of which had a severe detrimental affect on plaintiff, and none of which defendant subsequently resolved.

52. In addition to the foregoing acts of omission, defendant affirmatively committed acts which he knew, or should have known, as a competent matrimonial practitioner were frivolous, improper and would not be successful.

    A. Commenced an action for divorce on behalf of plaintiff in Connecticut when an action had already been commenced and conferenced in the Supreme Court of the State of New York;

    B. Made motions to recuse Justice Laura Drager and to dismiss the action in New York; and,

    C. Made a motion for interim counsel fees which was defective because defendant failure to attach to his motion papers any itemized bills for alleged services rendered.

53. By virtue of defendant's legal malpractice, plaintiff has had to retain new counsel

       to resolve the ambiguities and deficiencies caused by defendant.

54.    By virtue of defendant's conduct, plaintiff has been damaged in an amount of at least $10,000,000.00, the actual amount of which is to be determined at trial.

## AS AND FOR A EIGHTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

55.    Plaintiff repeats and reiterates paragraphs "1"-"54" as if fully set forth herein.

56.    As plaintiff's counsel, defendant owed an undivided fiduciary duty to plaintiff.

57.    By failing to disclose his professional relationship with her husband's attorneys, and his inherent divided loyalty, defendant breached his fiduciary duty to plaintiff.

58.    By withdrawing $250,000.00 of plaintiff's funds from his account purportedly for counsel fees, without the knowledge, consent or authorization of plaintiff, defendant breached his fiduciary duty to plaintiff.

59.    By disbursing plaintiff's funds from his account to third parties without plaintiff's knowledge, consent or authorization, defendant breached his fiduciary duty to plaintiff.

60.    By virtue of defendant's breach of fiduciary duty, plaintiff has been damaged in the amount of at least $1,000,000.00, the actual amount of which is to be determined at trial.

WHEREFORE, plaintiff requests judgment against the defendant, as follows.

1.    With respect to the first cause of action for breach of contract the sum of at least $525,000.00, the actual sum of which is to be determined at trial;

2. With respect to the second cause of action for violation of New York State Judiciary Law §487, the sum to be determined at trial but in an amount of at least $1,000,000.00 to be trebled to $3,000,000.00;

3. With respect to the third cause of action for unjust enrichment the sum of at least $525,000.00, the actual sum of which is to be determined at trial;

4. With respect to the fourth cause of action for misappropriation of client's funds, the sum of $250,000.00;

5. With respect to the fifth cause of action for violation of New York State Judiciary Law §487 the sum of $250,000.00 to be trebled to $750,000.00;

6. With respect to the sixth cause of action for fraudulent inducement, the sum of at least $1,000,000.00, the actual amount of which is to be determined at trial;

7. With respect to the seventh cause of action for legal malpractice, the sum of $10,000,000.00, the actual amount of which is to be determined at trial;

8. With respect to the eighth cause of action for breach of fiduciary duty, the sum of $1,000,000.00, the actual amount of which is to be determined at trial;

9. For interest, costs, disbursements, attorneys fees; and,

10. For such other and further relief as the Court deems just, proper and equitable.

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: New York, New York
December 6, 2005

Benjamin, Brotman & Associates, P.C.
Attorneys for Plaintiff

By: _____
Howard Benjamin (HB - 4723)

W:\yen luu\howard benjamin\WAXMAN\complaint 11-9-05.wpd